UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AHMED SAEED NASER AL
JALHAM,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Case No. 18-12595

Paul D. Borman
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 14)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On August 20, 2018, plaintiff Ahmed Saeed Naser Al Jalham filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D. Borman referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying Al Jalham's claim for disability benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 12, 14). Al Jalham also filed a reply brief in support of his motion for summary judgment. (Dkt. 15).

B.    <u>Administrative Proceedings</u>

Al Jalham filed an application for period of disability and disability insurance benefits, along with supplemental security income on June 1, 2015, alleging disability beginning on May 27, 2012.  (Tr. 15).[1]  The claims were initially disapproved by the Commissioner on October 29, 2015.  *Id.*  Al Jalham requested a hearing and on September 25, 2017, he appeared with counsel, before Administrative Law Judge ("ALJ") Crystal L. White-Simmons, who considered the case *de novo*.  (Tr. 36-67).  In a decision dated November 16, 2017, the ALJ found that Al Jalham was not disabled.  (Tr. 12-30).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 18, 2018, denied Al Jalham's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 10.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Al Jalham was born in 1966 in Yemen and was 45 years old on the alleged onset date.[2] (Tr. 29).  He has past relevant work as a material handler/shipper, receiving worker, and packager.  (Tr. 28).  Al Jalham stopped working on August 8, 2012 because of his medical conditions, including lumbar spine and disc disease, left shoulder degenerative joint disease, carpel tunnel syndrome, hypothyroidism, Hepatitis C, diabetes mellitus, and allergies.   (Tr. 331-332).  He lives with his wife and eight children.  (Tr. 40).

Following the hearing, the ALJ considered the evidence within the framework of the five-step disability analysis and found at step one that Al Jalham had not engaged in substantial gainful activity since his amended alleged onset date.  (Tr. 18).  At step two, the ALJ found Al Jalham's lumbar spine disc disease, anterolisthesis, left shoulder degenerative joint disease, carpal tunnel syndrome, hyperthyroidism, Hepatitis C, diabetes mellitus, allergies, and obesity were "severe" within the meaning of the second sequential step.  (Tr. 18).  The ALJ found that his hypertension, acute bronchitis, and major depressive disorder were not severe impairments.  (Tr. 20-21).  However, at step three, the ALJ found no

---

[2] At the hearing, Al Jalham amended his alleged onset date to September 22, 2014.  (Tr. 15).  Accordingly, he was 47 years on the amended onset date.

evidence that his impairments singly or in combination met or medically equaled

one of the listings in the regulations. (Tr. 22). Thereafter, the ALJ assessed Al

Jalham's residual functional capacity ("RFC") as follows to a limited range of light

work:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except no climbing
> ladders, ropes or scaffolds; occasionally climb ramps and
> stairs; occasionally balance, stoop, kneel, crouch, crawl;
> the claimant will need a sit/stand option after 30 minutes;
> occasional exposure to environmental irritants; no use of
> moving machinery or unprotected heights.

(Tr. 22). At step four, the ALJ found that Al Jalham was unable to perform his

past relevant work. (Tr. 28-29). At step five, the ALJ denied benefits because he

found that jobs existed in significant numbers in the national economy that Al

Jalham could perform and thus, he was not disabled from the amended alleged

onset date through the date of the decision. (Tr. 29-30)

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard

or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.

Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

7

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty-stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis and Conclusions</u>

1.    Need for a Cane

Al Jalham first argues that the ALJ did not explain her determination that he could ambulate without using a cane, even though an earlier ALJ decision had determined a cane was necessary for ambulation and balance. (Tr. 75). In the current decision, the ALJ found that there were changes in Al Jalham's impairments such that the prior decision is not binding, but he argues that the ALJ offered no rationale for her determination that he no longer needed a cane to ambulate and balance. (Tr. 16). The ALJ's decision mentioned that Al Jalham's impairments improved with physical therapy, but he maintains that she did not expressly address the need, or lack thereof, for a cane and no other evidence was discussed that would support her determination. (Tr. 27). Al Jalham also argues that the ALJ's finding of improvement of radiculopathy with physical therapy mischaracterizes the record given the prior MRI and more recent examination on March 27, 2017, during which Al Jalham again complained of radiating pain to Dr. Sulieman, who referred for another MRI. (Tr. 575-576). Al Jalham also points out that the ALJ incorrectly found that his activities of daily living support finding that he was less limited because he "continues to assist in shopping, laundry, and housework." (Tr. 27). According to Al Jalham, all testimony and evidence in the record shows that he does not shop, do laundry, or help with housework. (Tr. 50,

324).  Furthermore, the ALJ's conclusion that Al Jalham did not require the usage of the cane to ambulate and balance is also erroneous considering the fact that she granted great weight to the disability determination of Dr. Chiambretti, who stated that he required the use of a cane to ambulate and balance; yet, the ALJ neglected to explain why she failed to include this limitation.  Al Jalham maintains that the ALJ's error is harmful because the VE testified that he would be unable to perform any jobs at the light exertional level should he require the use of a cane to ambulate and balance.  (Tr. 61).  And, Al Jalham would then be limited to a sedentary range of work, which given his inability to communicate in English, would allow him to grid out.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.17.

In response, the Commissioner makes several arguments.  The Commissioner maintains that Al Jalham does not demonstrate that ALJ White-Simmons was required to include a provision for a cane in 2017 merely because ALJ Martin did so in 2014.  While ALJ White-Simmons applied *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), after her decision in this case, the Sixth Circuit modified *Drummond's* holding in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933-34 (6th Cir. 2018).  The *Earley* court held that *res judicata* does not apply to a prior ALJ's findings when a different time-period is at issue, and that therefore, the prior findings are not binding.  *Id*. at 933.  Although the prior findings remain relevant, the second ALJ should give the evidence "fresh review."

According to the Commissioner, ALJ White-Simmons found that a departure from ALJ Martin's findings was warranted in any event because there had been a change in Al Jalham's condition since the prior decision, a finding consistent with both *Drummond* and *Earley*. Even under *Drummond*, 126 F.3d at 842, a prior ALJ's findings were not controlling if the claimant presented new and material evidence in the second claim. Under *Earley*, 893 F.3d at 933, the prior findings are not binding to any extent – and their relevance depends on whether the evidence pertaining to the new time-period is new and material. Here, the Commissioner contends that substantial evidence supports ALJ White-Simmons's finding that Al Jalham's condition changed since the time of ALJ Martin's decision, such that a different RFC was warranted. (Tr. 16, 22). More specifically, ALJ White-Simmons supportably assessed an RFC that did not include a provision for a cane "for ambulation and balance." (*Compare* Tr. 22 (2017 RFC assessment) *with* Tr. 75 (2014 RFC assessment)).

The Commissioner acknowledges that the ALJ did not enumerate her reasons for departing from each of the prior ALJ's findings, but he argues that her decision as a whole sufficiently explains why she did not include a provision for a cane. The ALJ considered relatively mild or benign objective findings relevant to Al Jalham's walking abilities. She highlighted several findings from the September 2015 internal medicine consultative exam. (Tr. 24-25; see Tr. 423-30).

The examiner observed that Al Jalham was able to get on and off the examination table, tandem walk (but with a wide-based gait, and not on his heels and toes), squat and arise from squatting, and climb stairs. (Tr. 426-28). The examiner also indicated that "clinical evidence" did not support the need for any walking aid. (Tr. 428). According to the Commissioner, the record does not reflect significant treatment for Al Jalham's back impairment, but as the ALJ noted, to the extent treating providers remarked on his gait, they described it as normal. (Tr. 24 (citing Tr. 508); see also Tr. 501, 553 ("Patient uses nothing to help ambulate. Patient is not limping.")). The Commissioner points out that the ALJ also considered other normal or mild objective findings relevant to Al Jalham's back impairment, including some tenderness but normal or only mildly limited range of motion, intact sensation, normal reflexes, and 5/5 muscle strength in both lower extremities. (Tr. 24; see Tr. 426, 473, 501).

The Commissioner also maintains that the ALJ considered multiple references in the record indicating Al Jalham's improvement in functioning with physical therapy. (Tr. 27-28). In September 2015, Al Jalham told the consultative examiner that physical therapy had helped somewhat. (Tr. 424). Beginning in December 2016, when he evidently began experiencing new pain in his lower back and left buttock, Al Jalham again attended several months of therapy, and reported improvements and decreased pain after nearly every session. (Tr. 562-574).

During his initial session, moreover, he reported to the therapist that when he had therapy previously, following his herniated disc, he "improved to normal following physical therapy." (Tr. 563). He also testified that physical therapy was helpful. (Tr. 48).

The Commissioner contends the ALJ considered inconsistencies between Al Jalham's allegations regarding limited walking ability and his reported daily activities. (Tr. 27). The Commissioner contends that Al Jalham reported that he continued to assist his family with some housework;[3] attend mosque five times daily; and drive three times a week. (Tr. 20, 27; see Tr. 41, 50-51, 325-26, 433). He testified that he sometimes walked and sometimes drove to the mosque, which was "right next to [his] house." (Tr. 51). In addition, he denied using a cane or other assistive device in his Function Report. (Tr. 328). And even if Al Jalham's activities were disregarded, the objective evidence and his admissions regarding improvement with physical therapy adequately support the ALJ's finding that his walking abilities improved. Accordingly, the Commissioner contends that Al Jalham fails to establish any error in the ALJ's departure from the prior ALJ's RFC.

---

[3] According to the ALJ's opinion, Al Jalham "continued to assist with shopping, laundry, and housework." (Tr. 27). However, the only references in the record to such activities are plaintiff's testimony that he sometimes waters the plants and Dr. Nasser's 2014 opinions that Al Jalham *required assistance* with meal preparation, shopping, laundry, and housework. (Tr. 50, 549).

The Commissioner next points out that Dr. Chiambretti was not a treating source, and therefore Agency regulations do not require the ALJ to provide reasons, let alone "good reasons," for rejecting portions of his opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only *treating* sources.") (emphasis in original).  Moreover, there were multiple components to Dr. Chiambretti's opinion (Tr. 109-11), and Al Jalham cites no authority requiring the ALJ to accept or reject every single one on the record.  *See Kondrashov v. Comm'r of Soc. Sec.*, 2018 WL 1146875, at *5 (E.D. Mich. Feb. 12, 2018) (rejecting similar argument where claimant cited "no authority requiring an ALJ to explain each and every limitation or restriction he adopts or, conversely, does not adopt from a physician's opinion"), adopted by 2018 WL 1141802 (E.D. Mich. Mar. 2, 2018).  To the contrary, the Sixth Circuit has stated that even where "an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency [physician's] opinions verbatim, nor is the ALJ required to adopt [that physician's] limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015).  The Commissioner urges the Court to reject Al Jalham's invitation to find error based on the ALJ not adopting all the limitations Dr. Chiambretti assessed – particularly considering that Dr. Chiambretti did not rely on any evidence in the current record to assess the cane provision.  Rather, he stated that he merely was adopting ALJ

Martin's decision because the later evidence did not support "significant"
improvement or worsening.  (Tr. 110-11).  Significantly, the ALJ expressly stated
that she considered evidence from after Dr. Chiambretti's assessment (Tr. 26), and
that evidence included Al Jalham's 2016-2017 physical therapy records showing
improvement (Tr. 562-74); cf. *Kepke v. Comm'r of Soc. Sec*., 636 Fed. Appx. 625,
632 (6th Cir. 2016) (ALJ must give "some indication" that he "at least considered"
that state agency physician did not review the entire record before affording the
opinion significant weight).  Accordingly, the Commissioner argues that Al Jalham
failed to establish any material error in the ALJ's RFC assessment – especially
when the record is devoid of any evidence that he ever actually used a cane during
the relevant period.

Under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir.
1997), principles of *res judicata* dictate that the administration is bound by a prior
decision in a later case involving the same claimant unless a change of
circumstances is proven on a subsequent application.  *Drummond* mandated that
absent evidence that a claimant's condition has improved, findings issued by an
ALJ as part of a prior disability determination are binding on an ALJ in a
subsequent proceeding.  *Drummond*, 126 F.3d at 841.  Since the ALJ's decision in
this case, the Sixth Circuit clarified the reach of *res judicata* principles in *Earley*.
The Sixth Circuit held that *res judicata* does not "prevent the agency from giving a

16

fresh look to a new application containing new evidence or satisfying a new

regulatory threshold that covers a new period of alleged disability while being

mindful of past rulings and the record in prior proceedings." *Earley*, 893 F.3d 929,

931. The court concluded that *res judicata* "only 'foreclose[s] successive litigation

of the very same claim'" and does not apply when a claimant files a new

application seeking "disability benefits for a distinct period of time[.]" *Id.* (quoting

*New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). While *Earley* had not yet

been decided when the ALJ issued her decision, *Earley* has retroactive effect under

*Chevron Oil v. Huson*, 404 U.S. 97 (1971). Under *Chevron*, a new decision should

be applied to pending cases "unless it represents a 'clear break' with the past and

unless in addition it would be fundamentally unfair or otherwise burdensome to so

apply it." *Casiano v. Heckler*, 746 F.2d 1144, 1146 (6th Cir. 1984) (quoting

*Lawson v. Truck Drivers, Chauffers & Helpers, Local Union 100,* 698 F.2d 250,

254 (6th Cir.), cert. denied, 464 U.S. 814 (1983)). *Earley* merely clarifies long-

standing principles of *res judicata* as applied in administrative proceedings and

that *Drummond* had been applied in an unduly broad fashion:

> All of this helps to explain why *Drummond* referred to
> "principles of res judicata"—with an accent on the word
> "principles." 126 F.3d at 841–43. What are those
> principles? Finality, efficiency, and the consistent
> treatment of like cases. An administrative law judge
> honors those principles by considering what an earlier
> judge found with respect to a later application and by
> considering that earlier record. *Id.* at 842; *see Albright v.*

> *Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999).
> That is why it is fair for an administrative law judge to
> take the view that, absent new and additional evidence,
> the first administrative law judge's findings are a
> legitimate, albeit not binding, consideration in reviewing
> a second application.

*Id.* at 933. *Earley* does not represent a "clear break" and has been routinely

applied to ALJ decisions purporting to follow *Drummond*, evaluating whether the

ALJ satisfactorily reviewed the new evidence. *See Neal v. Comm'r of Soc. Sec.*,

2019 WL 2208555, at *9 (E.D. Mich. Jan. 31, 2019), report and recommendation

adopted, 2019 WL 1306162 (E.D. Mich. Mar. 22, 2019) (collecting cases). ALJ

Martin's decision is dated February 6, 2014. The amended onset date in the instant

case before ALJ White-Simmons is September 22, 2014, and thus, this case

involved an entirely new period to which *res judicata* does not apply.

Accordingly, ALJ White-Simmons was not bound by ALJ Martin's finding that

Al-Jalham required a cane for balancing and ambulating.

Furthermore, as explained by the Commissioner, ALJ White-Simmons

thoroughly discussed all the new evidence, focusing on evidence of treatment

showing improvement after the record review of Dr. Chiambretti. Dr. Chiambretti

conducted his review on October 28, 2015. (Tr. 113). ALJ White-Simmons

adopted his conclusions regarding Al Jalham's functional limitations, in large part,

except for the need for a cane for ambulation and balance. The ALJ was not

required to adopt Dr. Chiambretti's opinions in whole. "An ALJ is not bound to

either adopt or reject a physician's opinion in its entirety, but rather may accord differing weight to different portions of a medical opinion." *Zelin v. Colvin*, 2015 WL 5317147, at *11 (E.D. Mich. June 4, 2015), report and recommendation adopted, 2015 WL 5317154 (E.D. Mich. Sept. 11, 2015) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004)).  Thus, the ALJ did not err in declining to adopt Dr. Chiambretti's opinions wholesale.  Significantly, Dr. Chiambretti did not have the benefit of Al Jalham's medical records post-dating October 2015, which showed extensive treatment and improvements based on physical therapy throughout 2016 and 2017.  (Tr. 562-74).  The ALJ properly considered such evidence in assessing Dr. Chiambretti's opinions.

Al Jalham also insists that objective imaging and testing establishes impairments that require him to use a cane.  While such imaging certainly supports Al Jalham's impairments, which the ALJ found to be severe, he does not explain how the various imaging results translate into functional limitations.  *See Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) ("[T]he MRI . . . reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein. Moreover, Plaintiff does not provide any such insight in his argument to the  Court."); *Kamphaus v. Comm'r of Soc. Sec.*, 2015 WL 12672748, at *9 (E.D. Mich. June 22, 2015) (rejecting the contention that an MRI was material  to an ALJ's decision because

there was no medical evidence to show greater functional limitations based on the MRI results), rep. & rec. adopted, 2015 WL 5731839 (E.D. Mich. Sept. 30, 2015). The ALJ also pointed to relatively benign findings from September 2015 internal medicine consultative exam.  (Tr. 24-25; see Tr. 423-430).  The examiner (whose signature is illegible) observed that Al Jalham was able to get on and off the examination table, tandem walk (but with a wide-based gait, and not on his heels and toes), squat and arise from squatting, and climb stairs.  (Tr. 426-428).  The examiner also indicated that "clinical evidence" did not support the need for any walking aid.  (Tr. 428).  The record also reflects a normal gait with no use of a cane.  (Tr. 508, 5/11/15; Tr. 501, 11/20/14; 553, 5/20/15 ("Patient uses nothing to help ambulate.  Patient is not limping.")).  Other findings were normal or mild, including some tenderness but normal or only mildly limited range of motion, intact sensation, normal reflexes, and 5/5 muscle strength in both lower extremities.  (Tr. 426, 473, 501).  In sum, there is relatively little evidence in the record suggesting that Al Jalham required a cane for ambulation and balancing.  Yet, the evidence cited above provides considerable support for the conclusion that a cane was not needed.  Accordingly, the ALJ's RFC, which omitted provision for a cane, is supported by substantial evidence.

2.    Ability to communicate in English

Al Jalham finds fault with the ALJ's decision that he could communicate in

English, which he maintains is contrary to the record evidence.  He says the ALJ

provided no explanation as to how she reached this determination, and her

determination conflicts with Al Jalham's statements that he is unable to speak and

understand English, nor can he read and understand English.  (Tr. 330).  Notably,

the ALJ had Al Jalham testify at the hearing in Arabic through an interpreter.  (Tr.

39).  He contends the error is harmful because if Al Jalham were found unable to

perform light work and unable to communicate in English, he would have been

rendered disabled, "gridded out" under Grid Rule 201.17.  And, if Al Jalham were

limited to light work, with his inability to understand English, he would have

gridded out once he turned 50, which occurred one year before the hearing.  Grid

Rule 202.09.

In response, the Commissioner counters that even though the ALJ did not

explain this finding in the decision, Al Jalham cannot show he was harmed as a

result.  The Commissioner maintains that being "able to communicate" in English

is a very low threshold.  Internal Agency guidance explains that an individual

should be found unable to communicate in English only if he is unable to read,

write, speak, or understand (or some combination) a "simple message (such as

short instructions or an inventory list)" in English.  POMS DI

§ 25015.010(C)(1)(c)-(d).[4]  Although Al Jalham points to some evidence in the record suggesting that his English abilities were limited (Pl. Br. 18 (citing Tr. 39 (reflecting use of Arabic interpreter at the hearing), 330 (statement to Agency interviewer that he could not speak, understand, read English)), the Commissioner points out that there was also conflicting evidence in the record.  Al Jalham testified that he had taken some classes in English as a Second Language, and that while he did not finish them, he could speak and understand a "little," or "limited" English.  (Tr. 42).  He also testified that he had generally been able to communicate with his co-workers at past jobs, although sometimes he had requested assistance from his Arabic-speaking boss.  (Tr. 44-45).  And while he spoke Arabic with both the physical and psychological consultants who examined him at the Agency's request, he told the psychological examiner that his English was "good," and the physical examiner explained that he had used Arabic because it was "easier to understand medical terms."  (Tr. 424, 432).  The Commissioner acknowledges that the ALJ did not cite any of this evidence, and that it is thus unclear what evidence the ALJ relied on to find that Al Jalham could communicate in English.  The Commissioner maintains, however, that Al Jalham's previous admissions should nevertheless preclude him from claiming now that he is unable even to understand or convey a "simple message" in English.

---

[4] https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015010

The Commissioner also argues that Al Jalham's argument regarding the Grids is without merit.  Where, "the characteristics of the claimant do not identically match the description in the grid," or the claimant has additional, non-exertional limitations, then "the grid is used only as a framework or a guide to the disability determination."  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  In such cases, the ALJ must elicit additional evidence, such as vocational expert testimony, to identify specific jobs that an individual with the claimant's profile and limitations can perform.  *Id*. at 246.  The ALJ identified the grid rule that most closely matched Al Jalham's profile, which is Grid Rule 202.21.  This Rule provides that a younger individual (i.e., age 45-49, see 20 C.F.R. §§ 404.1563(c), 416.963(d)) is not disabled if he is limited to light work, has a high school education, is able to communicate in English, and whose past work was skilled or semiskilled but did not confer any transferable skills.  (Tr. 29); 20 C.F.R. Part 404, Subpt P, Appx. 2, § 202.21.  According to the Commissioner, because Al Jalham also had non-exertional limitations that this rule does not address, the ALJ properly relied on vocational expert testimony to determine what jobs Al Jalham could perform given these additional limitations. (Tr. 29-30).  Contrary to Al Jalham's assertion, the Commissioner maintains that the record does not support a finding that he was disabled under a different Grid rule.  In particular, the Commissioner insists that his argument that he "should have

23

gridded out with the determination that he was limited to sedentary work" lacks

merit.  (*Id.* (citing 20 C.F.R. Part 404, Subpt P, App'x 1, § 201.17 (providing that

an individual aged 45-49 is disabled if he is limited to sedentary work, is illiterate

or unable to communicate in English, and whose only work experience is

unskilled)).  This is so because Al Jalham fails to establish that he required a cane,

much less that he should have been found limited to sedentary work, and therefore

this rule does not apply.  *See Amir v. Comm'r of Soc. Sec.*, 705 Fed. Appx. 443,

452 (6th Cir. 2017) (rejecting claimant's argument that he should have been found

disabled under the Grids based on his limited English skills because he failed to

establish premise that he should have been limited to sedentary work).  Further, Al

Jalham's work experience does not match the category of this rule; the ALJ found

that his past relevant work was at least semi-skilled (Tr. 29), not unskilled, and he

has not challenged this determination.  Likewise, Al Jalham's argument that he

should have been found disabled under a different Grid rule as of his 50th birthday

is also unavailing says the Commissioner.  This argument fails because even if the

ALJ's light-work finding were accepted, an individual aged 50-54 is disabled if he

is limited to light work, is illiterate or unable to communicate in English, and his

only work experience is unskilled.  20 C.F.R. Part 404, Subpt P, App'x 1,

§ 202.09.  Thus, this rule still would not describe Al Jalham even if he were unable

to communicate in English, because he has semi-skilled work experience.  If even

one criterion of the rule does not describe the claimant, the rule does not apply.  20 C.F.R. §§ 404.1569, 416.969 ("[W]e do not apply these rules if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule.").  Consequently, the Commissioner argues that Al Jalham cannot establish that the Grids could direct a finding of disability here, regardless of his RFC.

The Commissioner also contends that Al Jalham ignores that both the ALJ and the vocational expert did, in fact, consider the impact of "limited" English skills on the availability of jobs.  (Tr. 30; see Tr. 64).  When asked what impact "limited English skills" would have on the ability to perform the three jobs she had identified, the vocational expert responded that she had only identified jobs that she believed "an individual with limited English skills would be able to engage in as the primary function of the job is not communicating with others."  (Tr. 64). She further stated that these jobs involved "hands-on learning."  *Id.*  Therefore, the Commissioner maintains that Al Jalham fails to establish that his allegedly limited English proficiency precludes a finding that he can perform a significant number of jobs.  *Amir*, 705 Fed. Appx. at 452 (finding that ALJ adequately accounted for claimant's language difficulties by relying on testimony of vocational expert who had "considered the potential language barrier in identifying jobs").

Here, the ALJ applied Grid Rule 202.21, which provides that a younger individual (i.e., age 45-49, see 20 C.F.R. §§ 404.1563(c), 416.963(d)) is not disabled if he is limited to light work, has a high school education, is able to communicate in English, and whose past work was skilled or semiskilled but did not confer any transferable skills.  (Tr. 29); 20 C.F.R. Part 404, Subpt P, Appx. 2, § 202.21.  Al Jalham does not explain why Grid Rule 201.17 (providing that an individual aged 45-49 is disabled if he is limited to sedentary work, is illiterate or unable to communicate in English, and whose only work experience is unskilled)) or Grid Rule 202.09 (providing that an individual aged 50-54 is disabled if he is limited to light work, is illiterate or unable to communicate in English, and his only work experience is unskilled) apply considering that his past relevant work was found to be semi-skilled.  More specifically, one category of Al Jalham's past relevant work as a material handler/shipper has an SVP of 3, which corresponds to semi-skilled work.  *See* Social Security Rule 00-4p; 2000 WL 1898704 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").  Accordingly, the Commissioner appears to be correct; Al Jalham would not "grid out" under either Grid Rule he identifies because his past relevant work is not limited to "unskilled"

work.  Furthermore, Al Jalham has not otherwise established that he is limited to sedentary work.

Moreover, a person is not *per se* disabled if he or she is illiterate or unable to communicate in English.  *Abdurahman v. Comm'r of Soc. Sec.*, 2012 WL 2863461, *7-8 (W.D. Mich. June 15, 2012).  Illiteracy, or the inability to communicate in English, is one category used to establish education level.  *Mohamed v. Comm'r of Soc. Sec.*, 2015 WL 1439261, *2 (S.D. Ohio Mar. 27, 2015); 20 C.F.R. § 416.964(b) (The "term education also includes how well you are able to communicate in English since this ability is often acquired and improved by education.").  A claimant bears of the burden of establishing education level.  *Id.* As set forth in 20 C.F.R., Part 404, Subpt. P, App. 2 § 201.00(i):

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18–44 even if they are illiterate or unable to communicate in English.

Accordingly, the inability to communicate in English does not significantly erode the sedentary unskilled occupational base.  Thus, while the inability to

communicate in English may erode the unskilled occupational base in the light

work category, it does not render someone automatically unable to work. As was

proper, the ALJ relied on the vocational expert to explore how Al Jalham's limited

English skills affected the occupational base to identify light, unskilled jobs that he

could perform despite those limitations. Al Jalham's argument fails because even

though the ALJ's decision did not contain a robust discussion[5] of his ability to

communicate in English, the ALJ expressly questioned the vocational expert

regarding the impact of his limited English skills and the VE identified several jobs

that would accommodate such a limitation. (Tr. 64). Similar questioning posited

to the VE was deemed sufficient by the Sixth Circuit in *Amir*, *supra*, and the

undersigned likewise finds it persuasive here. *See also Flores v. Berryhill*, 2017

WL 6882551, *22 (N.D. Ohio Dec. 15, 2017) (Even where ALJ did not pose

specific hypothetical to VE regarding claimant's limited English skills, where VE

was present while ALJ took testimony through interpreter about claimant's

education and English-speaking abilities, a hypothetical with claimant's "education

---

[5] Al Jalham argues that the ALJ's failure to explain this finding is reversible error and cites *Medina v. Berryhill*, 2017 WL 3601917, *4 and n. 3 (N.D. Ohio Aug. 22, 2017), but that case merely stated that if the failure to articulate constituted error, it was harmless error. He also mentions *Cosme v. Comm'r of Soc. Sec.*, 2018 WL 1801610 (N.D. Ohio Jan. 24, 2018), report and recommendation adopted, 2018 WL 833072 (N.D. Ohio Feb. 13, 2018), which simply recognized that the inability to speak English has little impact on an individual's vocational scope in a large number of unskilled work positions. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(i).

level" was sufficient to address the claimant's ability to speak English.).  The

questions posed to the VE, along with the evidence in the record supporting Al

Jalham's ability to communicate in English to some extent, though not specifically

discussed by the ALJ,[6] provide substantial evidence to support the ALJ's finding.

The undersigned finds no error regarding Al Jalham's ability to communicate in

English warranting remand.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

---

[6] Al Jalham testified that he had taken some classes in English as a Second Language, and that while he had not finished them, he could speak and understand a "little," or "limited" English.  (Tr. 42).  He also testified that he had generally been able to communicate with his co-workers at past jobs, although sometimes he had requested assistance from his Arabic-speaking boss.  (Tr. 44-45).  And while he spoke Arabic with both the physical and psychological consultants who examined him at the Agency's request, he told the psychological examiner that his English was "good," and the physical examiner explained that he had used Arabic because it was "easier to understand medical terms."  (Tr. 424, 432).

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 26, 2019                              s/Stephanie Dawkins Davis
                                                   Stephanie Dawkins Davis
                                                   United States Magistrate Judge

30