UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AHMED SAEED NASER AL JALHAM,

    Plaintiff,      Case No. 18-cv-12595

v.            Paul D. Borman
             United States District Judge

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL    Stephanie Dawkins Davis
SECURITY,        United States Magistrate Judge

     Defendant.
_____/

OPINION AND ORDER: (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 17); (2) ADOPTING THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE STEPHANIE DAWKINS DAVIS (ECF NO. 16); (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 12); (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 14); and (5) AFFIRMING THE FINDINGS OF THE COMMISSIONER

On August 26, 2019, Magistrate Judge Stephanie Dawkins Davis issued a Report and Recommendation addressing the cross-motions for summary judgment in this action. (ECF No. 16, Report and Recommendation.) In the Report and Recommendation, Magistrate Judge Davis recommended that the Court deny Plaintiff's January 2, 2019 Motion for Summary Judgment (ECF No. 12), grant Defendant's March 4, 2019 Motion for Summary Judgment (ECF No. 14), and affirm the findings of the Commissioner.

Now before the Court are Plaintiff's Objections to the Report and

Recommendation. (ECF No. 17, Plaintiff's Objections.) Defendant filed a timely Response. (ECF No. 18, Defendant's Response.) Having conducted a *de novo* review of the parts of the Magistrate Judge's Report and Recommendation to which objections have been filed pursuant to 28 U.S.C. § 636(b)(1), the Court will reject Plaintiff's Objections, adopt the Magistrate Judge's Report and Recommendation, and affirm the findings of the Commissioner.

## I.   BACKGROUND

The Court has reviewed the background in light of the record and finds that the Magistrate Judge's summary of the background of this case in the August 26, 2019 Report and Recommendation is accurate. (ECF No. 16, Report and Recommendation 3–4.)   In addition, plaintiff has not specifically objected to the background as described in the Report and Recommendation. Therefore, the Court adopts the background section in full. (*Id.*)

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." *Id.* Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks omitted). A general objection, or one that merely restates arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. An "objection" that does nothing more than disagree with a magistrate judge's determination "without explaining the source of the error" is not a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's review of the findings of the Administrative Law Judge (ALJ) is limited to determining whether those findings are supported by substantial evidence and made pursuant to proper legal standards. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(h)); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). It is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation

marks omitted). "If the Commissioner's decision is supported by substantial evidence, [the court] must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.' " *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

As to whether proper legal criteria were followed, a decision of the Social Security Administration (SSA) supported by substantial evidence will not be upheld "where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)).

This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip*, 25 F.3d at 286. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility' ") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

# III.    ANALYSIS

Plaintiff has advanced two objections to the Magistrate Judge's Report: (1) the Magistrate Judge erred in concluding that there was substantial evidence supporting the ALJ's finding that Plaintiff does not require the use of a cane because the Magistrate Judge applied the wrong legal standards; and (2) the Magistrate Judge erred in finding substantial evidence supporting the ALJ's conclusion that Plaintiff has a limited ability to communicate in English. (ECF No. 17, Plaintiff's Objections.) The Court finds that Magistrate Davis applied the correct legal standards when evaluating the ALJ's finding that Plaintiff does not require the use of a cane. The Court also finds that there is substantial evidence supporting the ALJ's conclusion that Plaintiff had a limited ability to communicate in English.

## A.    Objection (1): The Use of a Cane

Plaintiff's first objection to the Magistrate Judge's Report is that she applied the wrong legal standards in finding that there was substantial evidence to support the ALJ's omission of a cane in her determination of Mr. Al Jalham's residual functional capacity (RFC). (ECF No. 17, Plaintiff's Objections, PgID 751.) Plaintiff contends that Magistrate Judge Davis erred in analyzing the ALJ's determination under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018) rather than simply asking

whether the ALJ provided a "logical bridge between the evidence of record and her determination." (*Id.* at PgID 751–52.) Plaintiff also argues that Magistrate Judge Davis erred by providing "an evaluation of the evidence that the ALJ did not do in her decision." (*Id.* at PgID 751–52.) These arguments boil down into one specific objection to the ALJ's decision—rather than spelling out her decision not to include a cane in Plaintiff's RFC description by isolating specific pieces of evidence and saying "this is why I found that Mr. Al Jalham does not need a cane," the ALJ summarized the evidence in the record, explained how much weight she gave several pieces of evidence, and said that was why she made the entire RFC determination. That lack of specificity, according to Plaintiff, frustrates meaningful review and therefore constitutes reversible error. (*See id.* at PgID 750) ("If ALJ White-Simmons determined that a cane was not necessary, an explanation as to how she arrived at that conclusion is required."). The court does not agree, and finds that Magistrate Judge Davis applied the correct legal standards in her Report and Recommendation.

The Magistrate Judge began her evaluation with *Drummond* and *Earley* because those cases establish the framework for evaluating the extent to which a prior decision by an ALJ is controlling. (ECF No. 10, Transcript, PgID 122.) In *Drummond*, the Sixth Circuit held that the principles of res judicata apply to the Commissioner's previous disability findings. 126 F.3d at 842. That means,

according to the *Drummond* court, that ALJs are bound by prior ALJ decisions regarding a claimant's right to benefits, including prior RFC determinations, absent a showing by the Commissioner of changed circumstances. *Id.* at 842–43. *Earley* clarified this decision by making clear that the res judicata principles endorsed in *Drummond* "only 'foreclose successive litigation of the very same claim' " and do not apply with the same force when the claimant's new application for benefits is for a new and distinct period of time. 893 F.3d at 933 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Instead, an ALJ facing a "new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability" should give that new application a "fresh look" while "being mindful of past rulings and the record in prior proceedings." *Id.* at 931.

Here, the record contained a decision on Mr. Al Jalham's prior application for disability benefits where ALJ Martin found that Mr. Al Jalham had the RFC to perform light work "with the use of a cane for ambulation and balance." (ECF No. 10, Transcript, PgID 122.) Despite this past decision, in the present action, ALJ White-Simmons found that Mr. Al Jalham has the RFC to perform light work without the use of a cane for ambulation and balance. (*Id.* at PgID 68.) Plaintiff challenged ALJ White-Simmons' decision on the basis that it "improperly characterized the record in order to determine that Plaintiff did not need the cane in

order to ambulate." (ECF No. 12, Plaintiff's Motion for Summary Judgment, PgID 664.) Therefore, the necessary first step in an evaluation of Plaintiff's argument is analysis under *Drummond* and *Earley* to determine whether the prior ALJ's RFC determination that that Mr. Al Jalham required a cane was binding. The test is whether the prior ALJ decision was "such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence." *Earley*, 893 F.3d at 934 (quoting *Albright v. Comm'r of Soc. Sec.*, 174 F. 3d 473, 477–78 (4th Cir. 1999)). So, even though "Plaintiff never argued that the prior ALJ's determination had to be accepted" Magistrate Judge Davis correctly began her analysis with *Drummond*, *Earley*, and the res judicata principles upon which they expound. (ECF No. 17, Plaintiff's Objections, PgID 750.)

An application of those principles to this case establishes that there was substantial evidence in the record to support ALJ White-Simmons' decision that "there has been a change in the claimant's condition since the prior decision" such that the prior RFC determination was not binding. (ECF No. 10, Transcript, PgID 62.) The prior decision by ALJ Martin was based on a claim that alleged an onset date of May 27, 2012. (*Id.* at PgID 120.) ALJ Martin issued her decision on February 6, 2014. (*Id.* at PgID 131.) Mr. Al Jalham's second claim, at issue here, alleged an amended onset date of September 22, 2014. (*Id.* at PgID 64.) Therefore, as the

Magistrate Judge correctly pointed out, "this case involved an entirely new period to which *res judicata* does not apply." (ECF No. 16, Report and Recommendation, PgID 736); *see also Earley*, 893 F.3d at 933 ("Had [Claimant] filed a second application for disability benefits for . . . the same period covered by her first application, the ALJ could have correctly rejected it on res judicata grounds."). So, ALJ White-Simmons was not required to adopt ALJ Martin's determination as a binding resolution of Mr. Al Jalham's claim.

Once it is clear that the first decision is not binding because the second claim involves a distinct time period, the second ALJ must determine how much weight to give the first decision. At this step, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding consideration in reviewing a second application." *Earley,* 893 F.3d at 933. If the claimant's second application introduces very little or no new evidence, "[w]hat's past likely will be precedent" and the decision of the first ALJ will carry quasi-determinative weight. *Id.* at 933–34. If the record in front of the second ALJ contains substantial evidence that the claimant's condition has changed, the second ALJ can and should make new findings based on the updated record. Those new findings will be upheld upon

review if they are based on substantial evidence and pursuant to proper legal standards. *See Rogers*, 486 F.3d at 241.

Here, ALJ White-Simmons determined, on November 16, 2017, that there had been a change in Mr. Al Jalham's condition and that the record supported an RFC determination that, though very similar to ALJ Martin's determination, did not include the use of a cane for ambulation and balance. (ECF No. 10, Transcript, PgID 62, 68.) The question is whether that determination was supported by substantial evidence. The Magistrate Judge found, after examining ALJ White-Simmons' thorough discussion of the evidence post-dating ALJ Martin's decision, that it was. (ECF No. 16, Report and Recommendation, PgID 736–38.) Magistrate Judge Davis said that "there is relatively little evidence in the record suggesting that Al Jalham required a cane for ambulation and balancing," and that there is "considerable support for the conclusion that a cane was not needed." (*Id.* at PgID 738.) A brief review of the evidence discussed by ALJ White-Simmons confirms that there was, in fact, substantial evidence supporting her omission of a cane requirement in Mr. Al Jalham's RFC determination.

In her explanation of her RFC determination, ALJ White-Simmons first described Mr. Al Jalham's testimony, including his statements that he drives three times a week, that he can walk two blocks, stand for 25-30 minutes, sit for 30

10

minutes, that he attends mosque next door to his house five times a day, that he sometimes walks and sometimes drives to the mosque, that sometimes he helps water the plants but otherwise does not do chores around the house, and that he does not do any activities outside the house.[1] (ECF No. 10, Transcript, PgID 69.) Mr. Al Jalham did not testify that he uses a cane or any other assistive device to walk or balance himself, so ALJ White-Simmons did not discuss the use of the cane in this part of her opinion. (*Id.* at PgID. 69; *see also id.* at PgID. 85–101.)

ALJ White-Simmons then cataloged the reports of numerous doctors who treated or evaluated Mr. Al Jalham for his various impairments. (*Id.* at PgID 69–74.) The reports span two-and-a-half years, from September 4, 2014, when an EMG/NCS test showed "evidence of left L5 radiculopathy affecting the left lower extremity," or a pinched nerve causing pain in Mr. Al Jalham's left leg, through March 3, 2017,[2] when Mr. Al Jalham reported to his physical therapist that he felt "much better" and that his pain was no longer radiating into his left leg, up to March 27, 2017, when an

---

[1] Later in the opinion, ALJ White-Simmons does erroneously state that Mr. Al Jalham "continues to assist in shopping laundry, and housework," which contradicts his testimony and her prior statement that he does no chores around the house. (ECF No. 10, Transcript, PgID 69, 73.)

[2] ALJ White-Simmons identified the date of the physical therapy records as February 9, 2017, the date when Mr. Al Jalham was first assessed by the physical therapy provider, but there are several progress reports from the physical therapist provider that span the period from February 9, 2017 to March 23, 2017. (ECF No. 10, Transcript, PgID 73, 616–28.)

orthopedic surgeon examined Mr. Al Jalham's lower back, found that he had a limited range of motion and recommended an MRI in order to make further treatment recommendations. (*Id.* at PgID 69, 616, 629–30.) With one exception, when any of these reports mentioned Mr. Al Jalham's ability to walk or balance without the use of a cane, ALJ White-Simmons noted it. Specifically, she noted the following: a doctor on May 11, 2015 reported that Mr. Al Jalham had "a normal gait and station;" on September 26, 2015 a doctor performing a consultative exam opined that Mr. Al Jalham was able to walk for 20 minutes and had stiffness for 20 minutes, was somewhat helped by physical therapy, had mild limitation of physical activity, could "walk with a wide based gait," could get on and off the examination table, had muscle strength of 5/5 in all extremities except for his left hand, so clinical evidence did not support the need for a walking aid; and she noted that records from a May 20, 2015 examination indicate that Mr. Al Jalham was not limping or using anything to ambulate, though he could not walk on his heels or toes. (*Id.* at PgID 69–74.)

The one exception was the "Disability Determination Explanation" completed by Dr. Thomas Chiambretti, D.O. on October 28, 2015. (*Id.* at PgID 148–60.) In it, Dr. Chiambretti found, after a review of the prior RFC determination and all of Mr. Al Jalham's subsequent medical records, that the new evidence he reviewed did not "support significant improvement or worsening in  claimants [sic] condition since

[the first] ALJ decision" and therefore adopted ALJ Martin's RFC determination in its entirety. (*Id.* at PgID 152–53.) Dr. Chiambretti's explanation for his finding that "a medically required hand-held assistive device is necessary for ambulation" is that he adopted the prior ALJ decision. (*Id.* at PgID 156–57.) He further elaborated that Mr. Al Jalham "[c]an use AD [assistive device] for ambulation and balance if needed." (*Id.* at PgID 157.) ALJ White-Simmons gave Dr. Chiambretti's opinion that Mr. Al Jalham had a light residual functional capacity "great weight" because she found that it was "consistent with the totality of the evidence," but did not discuss the portion of the opinion where Dr. Chiambretti stated that a cane is necessary for ambulation. (*Id.* at PgID 72.)

Mr. Al-Jalham's testimony and the medical reports discussed by ALJ White-Simmons are sufficient to meet the substantial evidence standard of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kyle*, 609 F.3d at 854. Mr. Al Jalham testified that he can walk two blocks and stand for 30 minutes, and he did not mention that he requires the use of cane. The medical reports indicate that he generally had a normal or wide based gait, that he had some pain limitations on the use of his lower back but that his muscle strength was normal, and that his pain improved through physical therapy. No medical report indicates that Mr. Al Jalham ever used a cane, and no report prescribes a cane. Dr.

13

Chiambretti's opinion and ALJ Martin's opinion are the only two pieces of evidence in the record that indicate that Mr. Al Jalham requires the use of a cane. Further, Dr. Chiambretti's report simply adopts ALJ Martin's RFC determination on the basis that there was no evidence of a significant change in Mr. Al Jalham's condition between February 6, 2014, when ALJ Martin issued her decision, and October 28, 2015, when Dr. Chiambretti conducted his record review. The physical therapy records which show Mr. Al Jalham's condition improving are from 2017, and therefore were not available to Dr. Chiambretti at the time of his report. On balance, this is sufficient evidence for a reasonable mind to accept the conclusion that Mr. Al Jalham does not need a cane. *Cf. Kyle*, 609 F.3d at 854.

Plaintiff contends that even though the "ALJ is certainly able to find that Plaintiff did not require a cane to ambulate" the ALJ erred by not clearly articulating a rationale for omitting the cane requirement. (ECF No. 17, Plaintiff's Objections, PgID 751.) He says that her ruling failed to "provide a logical bridge between the evidence of record and her determination." (*Id.* at PgID 750) (citing *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. 2011). In *Pollaccia*, the court found that the ALJ failed to provide a bridge between the evidence and the result when the ALJ found that the claimant's depression was not severe without any citation to the record, which contained evidence that showed that

the claimant's "mental impairments may have more than a minimal limitation in her ability to perform basic work activities." No. 09-cv-14438, 2011 WL 281044, at *6. In fact, the ALJ's opinion was so devoid of reasoning regarding the severity of the claimant's depression that the court could not determine whether or not the ALJ evaluated it at all. *Id.* Here, ALJ White-Simmons discussed the record evidence at length when explaining her RFC determination. (ECF No. 10, Transcript, PgID 68–74.) She did not single out her decision not to include the use of a cane and explain it separately, but, given her initial finding that Mr. Al Jalham's condition changed since the prior decision, which was the primary piece of evidence indicating that Mr. Al Jalham needed a cane, her detailed analysis of the evidence showing an improvement in Mr. Al Jalham's symptoms is a logical bridge between the record and her conclusion. (*See id.* at PgID 62.)

Plaintiff also argues that ALJ White-Simmons' reliance on Dr. Chiambretti's opinion in support of her light work determination combined with her failure to discuss the part of that opinion where he says that a cane is required was an error because the ALJ "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale." (ECF No. 17, Plaintiff's Objections, PgID 751) (quoting *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004). Plaintiff's reliance on *Young* is misplaced. In

15

*Young*, the ALJ ignored key portions of a comprehensive vocational evaluation report that said the claimant had poor functional reading abilities which would hinder him on numerous jobs and that he worked at a far slower rate than the competitive rate. 351 F. Supp. 2d at 648–49. The findings in the report, which the ALJ ignored, were uncontradicted by the record, yet the ALJ cited the report for its findings regarding the claimant's need for sitting breaks, restrictions on the use of the claimant's wrists, and the fact that claimant could follow simple instructions. *Id.* at 648. The ALJ even stated that there were "[n]o additional specifics regarding [claimant's] residual functional capacity" in the report. *Id.* Here, ALJ White-Simmons gave Dr. Chiambretti's opinion that Mr. Al Jalham had a light residual functional capacity great weight because it was consistent with the totality of the evidence, which, other than its finding that Mr. Al Jalham can use a cane if necessary for ambulation and balance, it was. (ECF No. 10, Transcript, PgID 72, 156–57.) ALJ White-Simmons did ignore the cane finding in the report, but, unlike the omitted findings in *Young*, the cane finding was contradicted by the medical reports on the record that indicated that Mr. Al Jalham had a normal or wide-based gait and that he did not use or need to use a cane to walk or balance. *Compare Young*, 351 F. Supp. 2d at 648. Further, ALJ White-Simmons discussed the fact that she was not bound by the prior ALJ's decision because of changed circumstances, which amounts to an

explanation of why she did not rely on the parts of Dr. Chiambretti's opinion where he adopted the prior ALJ's RFC determination wholesale. Thus, while ALJ White-Simmons did, in some senses, pick and choose parts of Dr. Chiambretti's report without fully explaining her decision, the opinion as a whole provides a coherent and reviewable explanation for her RFC determination.

Magistrate Judge Davis applied the correct legal standards to find that there was substantial evidence that Mr. Al Jalham did not require the use of a cane for ambulation and balance. The Court affirms the Commissioner on this point.

### B.     Objection (2): The Ability to Speak English

Plaintiff's second objection to the Magistrate Judge's Report is that her "finding that the ALJ's determination that Plaintiff had a limited ability to communicate in English is not supported by substantial evidence." (ECF No. 17, Plaintiff's Objections, PgID 752.) Plaintiff contends that in order to be found able to communicate in English, a person must be able to speak, understand, read, and write a simple message in English, and that no evidence in the record shows that Mr. Al Jalham can read or write in English. (*Id.* at PgID 753) (citing PROGRAMS OPERATIONS MANUAL SYSTEM (POMS) DI 25015.010(C)(1)(b)-(c)). He further argues that this error was harmful because a finding that he cannot communicate in English would result in a finding that he became disabled upon turning 50 in

November of 2016 under the grid rules outlined in 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.09. (*See* ECF No. 12, Plaintiff's Motion for Summary Judgment, PgID 681.)[3] Mr. Al Jalham is correct that, if the ALJ had determined that he is unable to communicate in English, he would have qualified as disabled under grid rule § 202.09 as soon as he turned 50, because then he would be an individual closely approaching advanced age who is limited to light work, and whose previous work experience is unskilled.[4] However, there is substantial evidence to support ALJ White-Simmons' finding that Mr. Al Jalham is able to communicate in English.

---

[3] Plaintiff also argues that grid rule § 201.17 controls, and because it applies to "younger individual[s]" instead of individuals "closely approaching advanced age" it would control the entire period of claimed disability, not just to the time period after Mr. Al Jalham turned 50. (ECF No. 12, Plaintiff's Motion for Summary Judgment, PgID 681.) However, grid rule § 201.17 controls only when the claimant's RFC is limited to sedentary work, and, as discussed in the previous section, the ALJ's finding that Mr. Al Jalham could perform light work is supported by substantial evidence.

[4] There is some confusion in the record about whether Mr. Al Jalham's previous work should be classified as unskilled or skilled—ALJ White-Simmons said that his past relevant work was as a "material handler/shipping and receiving worker, by way of applying the Dennard decision [*Dennard v. Sec'y of Health and Human Servs.*, 907 F.2d 598 (6th Cir. 1990)] to the issue of the claimant's PRW" and as a "packager." (ECF No. 10, Transcript, PgID 74.) According to the vocational expert, a material handler job has a specific vocational preparation (SVP) of 3, which corresponds with semi-skilled work, and a packager job has an SVP of 2, which corresponds with unskilled work. (*Id.* at PgID 102–03.) The vocational expert then testified that Mr. Al Jalham's description of his past work corresponded with a packager job description. (*Id.* at PgID 103–05.) The Commissioner has now acknowledged the vocational expert's conclusion that Mr. Al Jalham's past work is unskilled. (ECF No. 18, Defendant's Response, PgID 762 n. 4.)

18

A claimant's ability to communicate in English should be evaluated in light of the reason it is an educational factor considered in a disability determination—because "it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language." 20 C.F.R. § 404.1564(b)(5); 20 C.F.R. § 416.964(b)(5). Inability to communicate in English is not defined in the regulations, but illiteracy is defined as when a "person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1); 20 C.F.R. § 416.964(b)(1). Further, the SSA policy and procedure manual, the POMS, which "does not have the force and effect of law" but is "nevertheless persuasive" indicates that "a person is unable to communicate in English when he or she cannot speak, understand, read, or write a simple message in English." *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); POMS DI 25015.010(C)(1)(b)-(c). Mr. Al Jalham argues that the use of the word "or" instead of the word "and" in the POMS DI definition means that a person who can speak, read, and understand English but cannot write in English must be found unable to communicate in English. (*See* ECF No. 17, Plaintiff's Objections, PgID 753.) The Commissioner argues that the inclusion of the phrase "any combination of the above" in subsection (c) of the broader POMS DI definition of

19

"illiterate or unable to communicate in English" means that inability to communicate should be evaluated based on the totality of the circumstances. (ECF No. 18, Defendant's Response, PgID 763.) The Commissioner's argument better accounts for the purposes of considering the claimant's English abilities within the disability determination. Therefore, the question is whether Mr. Al Jalham has the ability to understand or communicate a simple message in written or spoken English to the extent necessary to do a job he would otherwise be able to do. *See also* 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.00(g) ("While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance.").

There was substantial evidence supporting ALJ White-Simmons' finding that Mr. Al Jalham is able to communicate in English. (ECF No. 10, Transcript, PgID 75.) As Magistrate Judge Davis pointed out, Mr. Al Jalham testified that he could speak and understand a "little" or "limited" English, that he took but did not finish an English as a second language course, and that he could communicate with his coworkers at his old job though occasionally he needed help from his Arabic-speaking boss to translate. (*Id.* at PgID 88, 90–91.) Further, he told the Agency's

psychological examiner that his English was "good" even though he was communicating with the examiner in Arabic. (*Id.* at PgID 485.) His physical examiner said that he spoke Arabic with Mr. Al Jalham because it "is easier to understand the medical terms." (*Id.* at PgID 477.) In the Disability Report that Mr. Al Jalham's prior counsel helped him fill out, Mr. Al Jalham denies being able to speak and understand English or being able to read and understand English, but also indicates that he can write more than just his name in English. (*Id.* at PgID 381.) In his revised pre-hearing brief, Mr. Al Jalham states that he has "limited ability to read and write in English" and therefore requests an interpreter. (*Id.* at PgID 427.) Finally, the prior ALJ, ALJ Martin, also found that Mr. Al Jalham was able to communicate in English, and this decision was "a legitimate, albeit not binding consideration in reviewing [Mr. Al Jalham's] second application." (*Id.* at PgID 129); *Earley,* 893 F.3d at 933. Taken together, this is substantial evidence to support ALJ White-Simmons' determination that Mr. Al Jalham was able to communicate in English, even though some evidence, such as Mr. Al Jalham's reliance on an interpreter at the hearing, his indication on the Disability Report that he could not understand English, or his use of Arabic in communications with many of his medical providers, suggests that Mr. Al Jalham's English abilities are weak. *Cf. Colvin*, 475 F.3d at 730 ("If the Commissioner's decision is supported by substantial evidence, [the court]

must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.' ").

Finally, it was not reversible error for ALJ White-Simmons to fail to articulate her reasons for determining that Mr. Al Jalham could communicate in English. *See Medina v. Berryhill*, No. 1:16CV02524, 2017 WL 3601917, at *4 n.3 (finding that an ALJ's failure to articulate rationale for language proficiency determination is not *per se* reversible error when there was substantial evidence supporting ALJ's decision). There was substantial evidence in the record indicating that Mr. Al Jalham was able to communicate in English to the extent necessary to maintain his prior job and to be able to do other jobs in the national economy. Further, the ALJ specifically asked the vocational expert about "what impact, if any, would an individual's limited English skills have on any of the jobs [listed by the vocational expert]" and the vocational expert said that the only occupations she listed were jobs where "the primary function of the job is not communicating with others." (ECF No. 10, Transcript, PgID 64.) ALJ White-Simmons noted this testimony in her opinion, saying "[t]he VE testified that the claimant's limited English would not preclude the jobs cited." (*Id.* at PgID 76.) Therefore, it is clear that ALJ White-Simmons took Mr. Al Jalham's limited, but not non-existent, English communication skills into account when she made the presently contested disability determination. *Compare Amir v.*

*Comm'r of Soc. Sec.*, 705 F. App'x 443, 451–52 (6th Cir. 2017) (finding that a question by claimant's attorney to the vocational expert about the effect of claimant's "rudimentary verbal English skills and little, even less . . . reading and writing English skills" on the vocational expert's testimony was sufficient consideration of claimant's ability to communicate in English).

The Court finds that there was substantial evidence supporting ALJ White-Simmons' determination that Mr. Al Jalham was able to communicate in English. Therefore, there is no basis upon which to grant Plaintiff's Motion for Summary Judgment and the findings of the Commissioner must be affirmed.

## IV.    CONCLUSION

For all of the reasons stated above, the Court hereby: (1) OVERRULES Plaintiff's Objections (ECF No. 17); (2) ADOPTS the Report and Recommendation of Magistrate Judge Davis (ECF No. 16); (3) DENIES Plaintiff's Motion for Summary Judgment (ECF No. 12); (4) GRANTS Defendant's Motion for Summary Judgment (ECF No. 13); and (5) AFFIRMS the findings of the Commissioner.

IT IS SO ORDERED.


Dated:  October 29, 2019                          s/Paul D. Borman
                                                  Paul D. Borman
                                                  United States District Judge